WATERS v. SUPREME CONCLAVE KNIGHTS OF
DAMON.

</div>

Where, in a contract of life-insurance in a mutual benefit society, it
   is stipulated that the insurer shall not be responsible under it if
   the health of the insured shall become impaired by the use of
   narcotics, or alcoholic, vinous, or malt liquors, this stipulation
   amounts to a promissory warranty on the part of the insured, and
   a breach thereof will work a forfeiture of the policy.

2. The uncontradicted evidence in this case showing such a breach of warranty by the insured, it was not error in the court to direct a verdict for the defendant; and it is immaterial at what stage of the. trial, after evidence and argument is closed, this direction is given.

Argued June 10, — Decided July 23, 1898.

Action on insurance policy.   Before Judge Ross.   City court of Macon.   September term, 1897.

*Hardeman, Davis & Turner,* for plaintiff.

*Steed & Wimberly* and *A. W. Lane,* for defendant.

SIMMONS, C. J.   1.   Waters made application to the Supreme Conclave Knights of Damon for benefit insurance.   In his application he stated:   "I further agree that this order shall not be responsible under this contract if my health shall become impaired by the use of narcotics or alcoholic, vinous, or malt liquors."   In the statements he made to the medical examiner is the following:   " I agree that the excessive use of liquor or narcotics shall forfeit my membership."   The policy issued to him contained the following: " upon condition that the statements made by said person in the petition for this membership in said Conclave, and the statements certified by said petitioner to the medical examiner, both of which are filed in the Supreme Secretary's office, be made a part of this contract."   Waters accepted the policy with this condition in it.   The policy made the statements in his application and to the medical examiner a part of the contract of insurance.   By his acceptance of the policy with these words in it, he agreed that his statements should form part of the contract, and the agreement above quoted became a promissory warranty.   1 May, Ins. § 158; 1 Bacon, Ben. Soc. & Ins. §§ 194, 201; Schultz *v.* Ins. Co., 6 Fed. Rep. 672; Jeffries *v.* Life Ins. Co., 22 Wall. 47.   He therefore warranted that he would not use narcotics or alcoholic, vinous, or malt liquors to such an extent as to impair his health; and further agreed that a breach of this warranty would work a forfeiture of the policy, not only for himself but for the beneficiaries named therein.   This agreement was a material part of the contract of insurance; and if the evidence disclosed that there had been a breach of it, this avoided the policy and the beneficiary could not recover.

2. We have carefully read the evidence in the record, and say unhesitatingly that all of it which concerns the breach of this agreement or warranty shows conclusively that Waters did use alcoholic liquors to such an extent as to impair his health. The witnesses, for both plaintiff and defendant, all agree upon this point. Even the widow, the beneficiary, in her testimony says that her husband drank liquor to such an extent as to deprive him at times of his reason; so much so, that she had to leave him and to return to her father. At the time of his death he had delirium tremens, and so far lost his reason as to cut his own throat. This testimony shows clearly a breach of the warranty which rendered void the policy. A great deal of the testimony and much of the argument here was upon the question as to whether Waters died from the wound inflicted by himself or from the effects of anæsthetics administered to him by physicians. Under the view we take of the case it does not matter whether he died from the one or the other. It was clearly established that he had drunk liquor to such excess as to impair his health; and this was a breach of the warranty, which rendered the policy void. This being conclusively established, the judge did not err in directing a verdict although the jury had been in consultation for a long period of time. If there was no evidence to sustain a verdict for the plaintiff, the judge rightly directed one for the defendant; and it does not matter whether he did it at the close of the testimony or after the argument of counsel had concluded or after the jury had retired and had been in consultation for a whole day. The question is, whether the direction of the verdict was right under the evidence. In this case there can be no doubt that it was; and the action of the judge is therefore

*Affirmed. All the Justices concurring.*